IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TIMOTHY PRICE,

    Plaintiff,

v.

MINNESOTA LIFE INSURANCE COMPANY and
SHERWIN-WILLIAMS COMPANY,

    Defendants.                                                 Case No. 06-cv-1040-DRH

## MEMORANDUM and ORDER

**HERNDON, Chief District Judge:**

This matter is before the Court on the motions to dismiss brought by Defendant Sherwin-Williams Company ("Sherwin-Williams") (Doc. 17, 51) and the motions to strike and dismiss brought by Defendant Minnesota Life Insurance Company ("Minnesota Life") (Doc. 19, 52). For the following reasons, the motions are **GRANTED**.

## I. Introduction

According to the allegations of Plaintiff Timothy Price's second amended complaint, which is the operative complaint in this cause, Forrest Price, Timothy Price's father, was an employee of Sherwin-Williams in Flora, Illinois. Some time prior to the summer of 2002 Forrest Price purchased group life insurance through Sherwin-Williams. The insurance provided for a $100,000 death benefit comprised of a $25,000 primary benefit and a $75,000 supplemental benefit. While Forrest Price worked at Sherwin-Williams after 2002, the life insurance benefit grew to a total of $116,000 based on increases in his compensation or other factors. Forrest Price named Timothy Price as the beneficiary of the life insurance policy; in the alternative, Timothy Price alleges

that he is the only living successor in interest to the named beneficiary who predeceased his father. In the summer of 2002, Forrest Price went on approved disability leave from Sherwin-Williams because of congestive heart failure. His condition worsened and on October 16, 2005, while still on approved disability leave, Forrest Price died as a result of congestive heart failure.

On January 1, 2003, while Forrest Price was still on approved disability leave, Sherwin-Williams changed providers for its group life insurance. Since June 1, 2003, Minnesota Life has been the provider of group life insurance for Sherwin-Williams. In 2006 when Timothy Price attempted to claim on his father's group life insurance, Minnesota Life repeatedly denied his claim on the grounds that because Forrest Price was not actively at work when Minnesota Life became the carrier for Sherwin-Williams on January 1, 2003, Forrest Price was not covered by the policy. Thereafter, Timothy Price filed this lawsuit, asserting breach of contract against Minnesota Life and Sherwin-Williams, as well as vexatious refusal to pay insurance benefits under 215 ILCS 5/155 against Minnesota Life. Price contends that his father never received notice from Sherwin-Williams regarding the change in carriers with respect to its group life policy or the effect that the change could have on his father's coverage; alternatively, Price argues that Minnesota Life waived the policy provisions under which it denied coverage. Minnesota Life and Sherwin-Williams moved to dismiss Price's claims as preempted under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. After Price filed a second amended complaint adding a claim under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), Minnesota Life and Sherwin-Williams renewed their requests for dismissal of Price's state-law claims based on ERISA preemption. Having considered the submissions of the parties carefully, the Court now rules as follows.

## II. Discussion

### A. Legal Standard

"Federal Rule of Civil Procedure 8(a)(2) requires only . . . a short and plain statement of the claim showing that the pleader is entitled to relief, . . . in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the . . . grounds . . . of his . . . entitle[ment] to relief . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 1964-65. "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true[.]" *Id*. at 1965. In other words, a complaint is subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure if a plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974.

In ruling on a Rule 12(b)(6) motion a court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party. *See Mid Am. Title Co. v. Kirk*, 991 F.2d 417, 419 (7th Cir. 1993). While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See First Ins. Funding Corp. v. Federal Ins. Co.*, 284 F.3d 799, 804 (7th Cir. 2002). Moreover, the claimant must set forth sufficient information to outline the elements of his or her claims or to permit inferences to be drawn that the elements

exist. *See Strauss v. City of Chicago*, 760 F.2d 765, 767-68 (7th Cir. 1985) (the absence of any facts to support a plaintiff's claim renders the allegations of a complaint mere legal conclusions subject to dismissal). A complaint should not be dismissed pursuant to Rule 12(b)(6) unless it fails it provide fair notice of what the claim is and the grounds upon which it rests or it is apparent from the face of the complaint that under no plausible facts may relief be granted. *See St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007) (citing *Bell Atl. Corp.*, 127 S. Ct. at 1974).[1]

B.  **ERISA Preemption**

As noted, Price's operative complaint in this case asserts a claim for benefits due pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a), which provides, in pertinent part, that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B). However, the assertion of an ERISA claim in Price's operative complaint does not moot the central issue raised by Defendants' original motions to dismiss, namely, whether Price's claims for breach of contract and vexatious refusal to pay insurance benefits under 215 ILCS 5/155 are preempted by ERISA § 514, 29 U.S.C.

---

1. In addition to invoking Rule 12(b)(6), Minnesota Life also seeks to strike Price's complaint pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. "Rule 12(f) authorizes a court to strike matter from a pleading in rare cases when 'the allegations being challenged are so unrelated to plaintiff's claim as to be void of merit and unworthy of any consideration . . . and . . . the allegations are unduly prejudicial' in that the challenged matter 'has the effect of confusing the issues or is so lengthy and complex that it places an undue burden on the responding party.'" *George v. Kraft Foods Global, Inc.*, No. 06-cv-798-DRH, 2007 WL 853998, at *2 (S.D. Ill. Mar. 16, 2007) (quoting *Robinson v. City of Harvey*, No. 99 C 3696, 1999 WL 617655, at *1 (N.D. Ill. Aug. 11, 1999)). Rule 12(f) obviously has no bearing on this case and accordingly the Court has chosen to analyze Minnesota Life's motions to dismiss under the rubric of Rule 12(b)(6).

§ 1144. That portion of the statute provides, in pertinent part, "the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan[.]" 29 U.S.C. § 1144(a). Thus, the Court concludes that the issues raised by the motions to dismiss brought by Minnesota Life and Sherwin-Williams before the filing of Price's operative complaint remain live. *See Walker v. Monsanto Co. Pension Plan*, Nos. 04-cv-436-DRH, 06-cv-139-DRH, 06-cv-003-DRH, 05-cv-736-DRH, 2006 WL 2802051, at *1 (S.D. Ill. Sept. 27, 2006) (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1476 (3d ed. 1998 & Supp.2006)) (noting that a motion to dismiss is not mooted by the filing of an amended complaint where "the defects raised in the original motion remain in the new pleading[.]"). The Court notes also that, in evaluating a Rule 12(b)(6) motion, it may consider documents attached to the motion if such documents are referred to in a plaintiff's complaint and are central to the plaintiff's claim. *See McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006); *Wheeler v. Pension Value Plan for Employees of Boeing Co.*, No. 06-cv-500-DRH, 2007 WL 781908, at *1 n.1 (S.D. Ill. Mar. 13, 2007). Here, Minnesota Life has submitted the insurance policy at issue in this case as an exhibit in support of its motions to dismiss. The policy is referenced numerous times by Price in his operative complaint and is central to his claims, and thus the Court can review the policy in evaluating dismissal under Rule 12(b)(6).

Critical to resolution of the matter of whether Price's state-law claims are preempted by ERISA is whether the group life policy at issue constitutes an "employee welfare benefit plan" within the meaning of ERISA, defined under the statute as

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of

providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1). In *Ed Miniat, Inc. v. Globe Life Insurance Group, Inc.*, 805 F.2d 732 (7th Cir. 1986), the court explained that in simplified terms, the statute requires that, for a particular plan to come within ERISA's purview, it must be

(1) a plan, fund, or program, (2) established or maintained, (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits, (5) to participants or their beneficiaries.

*Id*. at 738 (citing *Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982)). In general, consistent with the broad remedial purpose of ERISA to ensure protection for participants in employee benefit plans, *see Lively v. Dynegy, Inc.*, No. 05-CV-00063-MJR, 2007 WL 685861, at *13 (S.D. Ill. Mar. 2, 2007), courts in this Circuit construe the definition of an employee welfare benefit plan under ERISA liberally. *See, e.g., Dwyer v. Unum Life Ins. Co. of Am.*, No. 03 C 1118, 2003 WL 22844234, at *2 (N.D. Ill. Dec. 1, 2003); *Goodson v. American United Life Ins. Co.*, No. IP:02-0197-C-T/K, 2002 WL 1354715, at *3 (S.D. Ind. May 2, 2002); *Russo v. B & B Catering, Inc.*, 209 F. Supp. 2d 857, 860 (N.D. Ill. 2002).

In ascertaining the existence of an employee welfare benefit plan, a court must look also to regulations promulgated by the Department of Labor that define a "safe harbor" for plans that do not come within the scope of ERISA. *See Postma v. Paul Revere Life Ins. Co.*, 223 F.3d 533, 537

(7th Cir. 2000); *Turnoy v. Liberty Life Assurance Co. of Boston*, No. 02 C 6066, 2003 WL 223309, at *3 (N.D. Ill. Jan.30, 2003). Under the safe harbor regulations, a plan will not come under the broad sweep of ERISA when it can be demonstrated that an employer: (1) did not make any contributions to the plan; (2) left participation in the program completely to the discretion of employees; (3) without endorsing the program, limited its functions with respect to the program to permitting an insurer to publicize the program to employees, collecting premiums through payroll deductions or dues checkoffs and remitting them to the insurer; and (4) received no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs. *See* 29 C.F.R. § 2510.3-1(j). In order to fit within the regulation, a plan must meet all four criteria. *See Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1345 (11th Cir. 1994); *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 241 n.6 (5th Cir. 1990); *Kanne v. Connecticut Gen. Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir. 1988). The safe harbor essentially sets forth a minimal level of employer involvement that is below the minimum threshold necessary to constitute "establishing or maintaining" an ERISA plan. *See Brundage-Peterson v. Compcare Health Servs. Ins. Corp.*, 877 F.2d 509, 511 (7th Cir. 1989).

In this case it is apparent from review of the insurance policy giving rise to the dispute that Sherwin-Williams "established or maintained" the policy and that ERISA's safe harbor provision does not apply to the plan. In order for Price to prevail on his claim that this plan is outside of the reach of ERISA, "employer neutrality is essential," *Turnoy*, 2003 WL 223309, at *3, and only a "minimal level of employer involvement is necessary to trigger ERISA." *Russo*, 209

F. Supp. 2d at 860. In *Brundage-Peterson*, the United States Court of Appeals for the Seventh Circuit examined the two extremes of welfare benefits plans. On the one hand, the court observed, an employer could "offer[ ] no welfare benefit plan to its employees" and instead "leave[ ] each employee free to shop around for his or her own health (accident, disability, life, etc.) insurance," in which case "ERISA [would] not apply." 877 F.2d at 510. The court noted further that "the employer could take a few steps beyond this and still remain outside the scope of [ERISA] – such steps as distributing advertising brochures from insurance providers or answering questions of its employees concerning insurance, or even deducting the insurance premiums from its employees' paychecks and remitting them to the insurers." *Id*. By contrast, "[a]t the other extreme, the employer who provides welfare benefits directly to its employees has by virtue of doing so an ERISA plan." *Id*.

The situation presented in this case is somewhere in between the two extremes, as was also the case in *Brundage-Peterson*. The court there found that the employer had created an ERISA plan because "[a]n employer who creates by contract with an insurance company a group insurance plan and designates which employees are eligible to enroll in it is outside the safe harbor created by the Department of Labor regulation." 877 F.2d at 511. The court added, "[t]his is especially clear when in addition, as was done here, the employer helps defray the employee's insurance cost[.]" *Id*. In this case, the policy giving rise to the dispute provides quite clearly for payment of premiums through employer contributions. Also, the policy and the summary plan document name Sherwin-Williams as the policyholder and as the sponsor and administrator of the plan. *See Turnoy*, 2003 WL 223309, at *3 ("If an employer favors one or more plans over allowing covered persons to shop in the open market, or if an employer defines eligibility or performs other

administrative functions, ERISA may be implicated."). The Court therefore concludes that the policy constitutes an employee welfare benefit plan within the meaning of ERISA that was established or maintained by Sherwin-Williams.

Having concluded that the insurance policy at issue is an ERISA plan, the Court concludes further that Price's state-law claim for breach of contract "relate[s] to" an ERISA plan and therefore is preempted under ERISA § 514(a), 29 U.S.C. § 1144(a). *See, e.g., Tomczyk v. Blue Cross & Blue Shield United of Wis.*, 951 F.2d 771, 777 (7th Cir. 1991) (holding that a state-law claim for breach of contract was preempted by ERISA).[2] A slightly closer question is whether Price's claim for vexatious refusal to pay insurance benefits under 215 ILCS 5/155 likewise is preempted by ERISA. Although the Seventh Circuit Court of Appeals has not spoken to the issue, the Court concludes both that ERISA preempts Price's Section 5/155 claim and that the claim is not within the scope of ERISA's saving clause, which provides, in pertinent part, "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). In order for state law to escape preemption under the saving clause, two requirements must be satisfied: (1) the state law must be specifically directed toward entities engaged in insurance; and (2) the state law must substantially affect the risk pooling arrangement between the insurer and insured. *See Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 342 (2003). Applying these factors to Price's Section 5/155 claim, the Court concludes that the saving clause does not apply, and thus Price's

---

2. Because the Court holds that Price's breach of contract claims are preempted by ERISA, the Court declines Sherwin-Williams's invitation to convert its most recent motion to dismiss to a motion for summary judgment for the purpose of resolving Price's claim for breach of contract against Sherwin-Williams.

claim is preempted. The Court recognizes that the purpose of Section 5/155, which was enacted as part of a revision to the Illinois Insurance Code, is to provide a remedy for insurer misconduct and thus the state law is specifically directed toward entities engaged in insurance. *See, e.g., Estate of Cencula v. John Alden Life Ins. Co.*, 174 F. Supp. 2d 794, 800 (N.D. Ill. 2001). Nonetheless, while Section 5/155 is limited to entities within the insurance industry, it does not transfer or spread policy holder risk. As a sister court in this Circuit observed, Section 5/155 "does not govern the substantive content of the insurance contract, but merely regulates the procedural aspects of claims processing by providing certain remedies in the event of vexatious insurance practices." *Buehler Ltd. v. Home Life Ins. Co.*, 722 F. Supp. 1554, 1561 (N.D. Ill. 1989). Moreover, as the *Buehler* court pointed out, state-law claims cannot be saved under ERISA where, as is the case with Section 5/155, they permit a beneficiary to obtain remedies that are specifically unavailable under ERISA. "Section 155 allows a plaintiff to recover a substantial statutory penalty much akin to punitive damages and completely at odds with ERISA's implicit prohibition on punitive damages recoveries." *Id*. at 1562. The Court will dismiss Price's claims for breach of contract and vexatious refusal to pay insurance benefits.

Having concluded that ERISA preempts Price's state-law claims, the Court turns finally to the question of whether Minnesota Life and Sherwin-Williams are proper parties to Price's claim under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Generally, the Seventh Circuit limits claims for benefits due under ERISA to a suit against a plan as an entity. *See Blickenstaff v. R.R. Donnelley & Sons Co. Short Term Disability Plan*, 378 F.3d 669, 674 (7th Cir. 2004) (stating that "a § 502(a)(1)(B) claim for benefits . . . generally is limited to a suit against the Plan[.]"). Of course, rules are commonly subject to exceptions, and courts in this Circuit have recognized limited

circumstances in which a party other than a plan may be a proper defendant in an ERISA action for benefits due. *See, e.g., Mein v. Carus Corp.*, 241 F.3d 581, 585 (7th Cir. 2001) (holding that the employer was a proper defendant to an ERISA claim for benefits due because the employer and a plan were "closely intertwined"); *Madaffari v. Metrocall Cos. Group*, No. 02 C 4201, 2004 WL 1557966, at **2-5 (N.D. Ill. July 6, 2004) (allowing a plaintiff to maintain a suit for benefits due against an insurance company because the plan had no assets and there was ambiguity in determining the identity of the plan entity); *Rivera v. Network Health Plan of Wis., Inc.*, 320 F. Supp. 2d 795, 800-01 (E.D. Wis. 2004) (denying an insurance company's motion for summary judgment because the plan documents were still missing and it was not clear whether the insurance company was the plan administrator or whether any other party was necessary for complete relief to be accorded); *Penrose v. Hartford Life & Accident Ins. Co.*, No. 02 C 2541, 2003 WL 21801214, at **2-3 (N.D. Ill. Aug. 4, 2003) (allowing a plaintiff to sue an insurance company when the identity of the plan entity was unknown to the parties, even after some discovery).

In this case, the Court sees no reason to depart from the normal rule that in an action for benefits due under ERISA the plan is the only proper defendant. This is not a case in which the identity of the plan entity is unknown, and instead the plan is clearly identified in the record as the Sherwin-Williams Company Group Life Insurance Plan. Similarly, nothing in the record suggests that the plan is closely intertwined with Sherwin-Williams or without assets so as to bring this case within one of the limited exceptions to the rule that a suit for benefits due must be brought against the plan entity. *See Black v. Long Term Disability Ins.*, 373 F. Supp. 2d 897, 899-900 (E.D. Wis. 2005) (dismissing claims against a plan sponsor and plan administrator where there was no evidence that the plan sponsor was closely intertwined with the plan or that the

plan could not be readily identified by the plaintiff).  Accordingly, the Court will dismiss both Minnesota Life and Sherwin-Williams from this case.  Apart from Price's failure to name the plan as Defendant, the Court concludes that Price's claim under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), withstands Rule 12(b)(6) scrutiny, and therefore Price will be granted leave to file an amended complaint asserting an ERISA claim for benefits due against the Sherwin-Williams Company Group Life Insurance Plan.

### III. Conclusion

The motions to dismiss brought by Sherwin-Williams (Doc. 17, 51) and the motions to strike and dismiss brought by Minnesota Life (Doc. 19, 52) are **GRANTED**.  The claims for breach of contract asserted against Minnesota Life and Sherwin-Williams and the claim under 215 ILCS 5/155 asserted against Minnesota Life are **DISMISSED**, and both Minnesota Life and Sherwin-Williams are **DISMISSED** from this cause.  Price is **ORDERED** to file an amended complaint asserting a claim under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), against the Sherwin-Williams Company Group Life Insurance Plan not later than **twenty (20) days** from the date of entry of this Order.

**IT IS SO ORDERED.**

Signed this 10th day of March, 2008.

/s/ *David R Herndon*
**Chief Judge**
**United States District Court**